NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0844n.06

No. 14-5073

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 12, 2014
DEBORAH S. HUNT, Clerk

)
UNITED STATES OF AMERICA,                    )
)
    Plaintiff-Appellee,                      )
)    ON APPEAL FROM THE UNITED
           v.                              )    STATES DISTRICT COURT FOR THE
)    EASTERN DISTRICT OF KENTUCKY
)
ISIAH MARQUIS MUNDY,                         )
)
    Defendant-Appellant.                     )
)

**BEFORE: COOK and WHITE, Circuit Judges; MICHELSON, District Judge.**[*]

**HELENE N. WHITE, Circuit Judge**. After the district court denied his motion to suppress cocaine seized by narcotics detectives, Isiah Mundy pleaded guilty of possessing cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), pursuant to a plea agreement reserving his right to appeal the court's suppression ruling. He was sentenced to 208 months in prison and now challenges the denial of his motion to suppress. We AFFIRM.

**I.**

We review a district court's factual findings on a motion to suppress for clear error and its legal conclusions *de novo*. *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009). A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* We consider all evidence in the light most

---

[*] The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

favorable to the party prevailing in the district court. *United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008).

## II.

After hearing testimony at the suppression hearing, the district court found the facts as follows. Around 10:20 p.m. on April 18, 2013, Detectives Lain and Tudor were patrolling a "high-crime area" in an unmarked Ford Taurus. Upon turning onto a poorly lit and largely deserted street, the detectives saw a Ford Contour parked at the side of the road, not running, with a pair of legs sticking approximately 1½ feet straight out of the rear-passenger-side door of the vehicle. The detectives slowed down to get a closer look and, once satisfied that legs were in fact sticking out of the car, stopped to investigate.

Detective Lain jumped out of the police car, announced himself as a law-enforcement officer, and approached the Contour with his flashlight, while Detective Tudor called for backup. Upon approaching the Contour, both detectives realized that there were two individuals seated in the front seats of the car, as well as Mundy in the backseat, lying sideways, with his head near the center console and legs protruding from the back door. Detective Tudor immediately recognized Mundy and identified him to Detective Lain as a local resident who had been accused of trafficking drugs, and who had been arrested in the past for trafficking activities. As the detectives approached Mundy, he sat up and turned toward the open door, and the detectives saw a digital scale in plain view near his feet. At no point did either officer handle his weapon or raise his voice. Within a few minutes, additional officers arrived on the scene.

Ultimately, after receiving consent to search from Mundy and the car's owner, the detectives found and seized 32.77 grams of cocaine, a digital scale, and $2,242.60. After receiving his *Miranda* warnings, Mundy waived his right to counsel and made several

inculpatory statements. Mundy was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).[1]

Mundy moved to suppress the evidence, arguing that the entire interaction was nonconsensual and that the detectives did not have reasonable suspicion to investigate. The district court disagreed, finding that the interaction was consensual and, in the alternative, that the detectives had reasonable suspicion to initiate and escalate the interaction. Mundy conditionally pleaded guilty and waived his right to appeal, except the "right to appeal the District Court's denial of his pretrial motion to suppress evidence and to argue that the police lacked reasonable suspicion to seize the vehicle in which [he] was a passenger."

## III.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "A warrantless search or seizure is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

> The Supreme Court has identified three types of reasonable, and thus permissible, warrantless encounters between the police and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon "reasonable suspicion"; and (3) arrests which must be based upon "probable cause."

*United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008). Here, the district court found that the encounter was both consensual and supported by reasonable suspicion.

---

[1] When transporting Mundy to the station, the detectives found 4.197 grams of heroin on his person. Mundy was initially charged with possession with intent to distribute heroin, also in violation of 21 U.S.C. § 841(a)(1), but the Government dropped this count when Mundy pleaded guilty.

Mundy argues that his interaction with the detectives was nonconsensual and that the detectives lacked reasonable suspicion to initiate the interaction. The Government does not argue that the detectives had probable cause to initiate the stop, only reasonable suspicion.

**A.**

As a preliminary matter, the Government argues that Mundy waived his right to appeal the district court's finding that the interaction was consensual. Mundy disagrees, arguing that he reserved the right to appeal all aspects of the district court's order. Indeed, if the Government's interpretation of the plea agreement is correct, Mundy's right to appeal would be wholly meaningless. In any event, because we find that the detectives had reasonable suspicion to investigate the Contour, we will assume *arguendo* that Mundy preserved the right to appeal all aspects of the district court's ruling. Further, our conclusion that the officers had reasonable suspicion makes it unnecessary to address the district court's more tenuous ruling that the encounter was consensual.

**B.**

Whether reasonable suspicion of criminal activity has been adequately established to justify a traffic stop is a mixed question of law and fact that we review *de novo*. *Torres-Ramos*, 536 F.3d at 550. "The reasonableness of a traffic stop is measured by the same standards set forth for investigatory stops in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). Reasonable suspicion requires "more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778–79 (6th Cir. 2006)).

Reasonable suspicion must be considered "under the totality of the circumstances, considering 'all of the information available to law enforcement officials at the time.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Feathers v. Aey*, 314 F.3d 843, 849 (6th Cir. 2003). "In considering the totality of the circumstances, 'we must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately.'" *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001)). Officers are entitled "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *United States v. Campbell*, 549 F.3d 364, 370–71 (6th Cir. 2008) (internal citations omitted). "If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop." *Dorsey*, 517 F.3d at 395.

In the instant case, the district court found that:

the detectives (i) identified the location as a high-crime area and that they had received complaints of drug transactions [] specifically occurring in vehicles parked along the side of the road; (ii) the vehicle itself was completely dark with no interior or exterior lights, it was late at night, and the area itself was poorly lit, [] (iii) Mundy's position in the vehicle was indicative of a potential break-in and; (iv) the officers did not view any other individuals in or around the vehicle.

## C.

Considering all the circumstances, the detectives' observations gave them a "particularized and objective basis for suspecting [Mundy] of criminal activity." *See Dorsey*,

517 F.3d at 395. The detectives were patrolling a poorly lit street in a high-crime area, late at night, and saw legs sticking out of an apparently otherwise unoccupied parked car. Detective Tudor testified that he believed that the position of the legs was indicative of a break-in. That his suspicion of a break-in turned out to be incorrect does not negate the reasonableness of his decision to stop and investigate. Detective Tudor acknowledged that the situation *could* have been benign, but stated that all the circumstances, including his experience and inferences drawn therefrom, led him to investigate. Reasonable suspicion "is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Id.* Sufficient likelihood of criminal activity was present here.

Because the detectives demonstrated an articulable basis for investigating the Contour, Mundy's initial encounter with police did not violate the Fourth Amendment. *See Lyons*, 687 F.3d at 763–64. Once they approached Mundy and saw the digital scale on the floor of the vehicle near Mundy's feet, they had reason to investigate further. At that point, they obtained consents to search, which Mundy does not challenge, and found the cocaine.

**IV.**

For these reasons, we AFFIRM the district court's order denying Mundy's motion to suppress.